UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 08-CV-91-KSF

MARK LEE CROSSLAND                                                    PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

MARSHA ROWE, ET AL.                                               DEFENDANTS

\*\*\*   \*\*\*   \*\*\*

Mark Lee Crossland ("Crossland"), an inmate confined at the Eastern Kentucky Correctional Facility ("EKCC"), has filed a *pro se* 42 U.S.C. § 1983 complaint [Record No. 2]. The Court has granted his motion to proceed *in forma pauperis* by separate Order.

The Court screens civil rights complaints pursuant to 28 U.S.C. § 1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). As Crossland is appearing *pro se*, his Complaint is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action (a) is frivolous or malicious, or (b) fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

## I.    Factual Background

On July 29, 2007, Defendants Rowe and Gilliam transported Crossland from the McCracken Regional Jail to EKCC in a motor vehicle. During the trip, Rowe and Gilliam smoked cigarettes, contrary to EKCC policy and Crossland's repeated requests that they not smoke in his presence.

Rowe and Gilliam also turned the volume on the radio up to "15." Crossland complained about this behavior upon his arrival at EKCC that evening.

Crossland was then taken to EKCC's Special Management Unit ("SMU") and placed in a cell. The next morning, Crossland inquired whether he would be given his normal daily medications, which include valproic acid, a mood stabilizer he had been prescribed for daily dosing. Staff responded that he should be receiving his normal medications during his stay; however, Crossland was never given this medication during his 8-day stay in the SMU. After Crossland was released from the SMU back into the general prison population in early August, on one occasion on September 27, 2007, staff again failed to give Crossland his daily dose of valproic acid.

Crossland filed grievances with respect to these issues in August and September 2007, and pursued appeals of those grievances to the Commissioner of the Kentucky Department of Corrections ("KDOC") and the Medical Director of the KDOC, respectively. Crossland filed the Complaint in this action on February 8, 2008, seeking monetary damages against the named defendants in their individual and official capacities.

## II.   Analysis

The Eighth Amendment prohibits the infliction of "Cruel and Unusual Punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). The Constitution "does not mandate comfortable prisons," but the Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, including "adequate food, clothing, shelter, and medical care, and ... 'reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

With respect to the provision of medical care, "[i]n order to state a cognizable claim [under

the Eighth Amendment] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This requirement has two components. The first component is objective and requires that the prisoner be complaining about medical needs that are sufficiently "serious" to implicate constitutional concerns. The second component is subjective, and requires the prisoner to demonstrate that prison officials acted with "deliberate indifference" to those needs, a knowing and culpable state of mind demonstrated by circumstances such as "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

In *Helling v. McKinney*, 509 U.S. 25 (1993), the Supreme Court reviewed an Eighth Amendment claim arising out of a prisoner's exposure to environmental tobacco smoke ("ETS"). In its opinion, the Court held that in order to satisfy the objective component, the prisoner must demonstrate that he was "exposed to unreasonably high levels of ETS" and that it "posed an unreasonable risk of serious damage to his future health." *Id*. At 35-36. With respect to the subjective requirement, the required showing of "deliberate indifference," the court must consider "the prison authorities' current attitude and conduct" in addressing the environmental concern.

In this case, Crossland was exposed to ETS during a one-day transport from one prison facility to another. His only medical complaint was that he was "a 'non-smoker' and was being made sick by the lingering smoke." Complaint p. 4. He claims Defendants "lowered windows" but did not cease smoking. Crossland does not claim that his present or future health is unreasonably endangered in any way. Thus, Crossland has failed to satisfy the objective component. *Helling*, 509 U.S. at 35. *Henderson v. Martin*, 73 Fed.Appx. 115, 118 (6th Cir. 2003) ("Henderson must show

that his exposure to ETS went beyond 'mere discomfort or inconvenience' to the level of being a 'serious health threat"); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992) ("The issue then is whether the prisoners' pre-existing medical conditions are such that exposing them to ETS represents a serious health threat or constitutes mere discomfort").

Nor can Crossland satisfy the subjective component of *Estelle*.  With respect to EKCC, both it and KDOC have a policy against smoking in state-owned vehicles.  While that policy was not followed in this case, "[i]mperfect enforcement of the policy shows, at most, negligence by the defendants, rather than deliberate indifference." *Taylor v. Boot*, 58 Fed.Appx. 125 (6th Cir.2003); *Harris v. Murray*, 761 F.Supp. 409, 412 (E.D. Va. 1990) (dismissing Eighth Amendment claim for exposure to second hand smoke).  With respect to the individual defendants, while their conduct evidenced knowledge that they were exposing the plaintiff to some degree of ETS, this is not the same as intentionally exposing him to a known risk of serious harm, particularly in light of the absence of any pre-existing medical condition or serious health threat.  In short, while the individual defendants acted deliberately, they were not indifferent to the plaintiff's "serious" medical needs. *Cf. Washington v. Davis*, 2003 WL 1873272 (N.D. Cal. 2003).

Prison staff also failed to give Crossland his prescribed medication on two occasions, one during an eight day period in the SMU and again on a single occasion a month later.  The law is clear that if a prison official intentionally interferes with a regimen of prescribed medications he or she violates the Eighth Amendment, but does not do so if he or she is merely negligent in ensuring that the inmate receives the prescribed medication.  Such negligence cannot satisfy the requirement that the official acted with *deliberate* indifference.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (deliberate indifference includes intentional interference with prescribed treatment); *Wakefield v.*

*Thompson*, 177 F.3d 1160, 1165 (9th Cir.1999) (allegation that prison official has intentionally ignored instructions of prisoner's treating physician by not dispensing prescribed medication is sufficient to state deliberate indifference claim).  Particularly where there is no indication in the record that the delay in receiving the medication caused any objectively-ascertainable harm, the allegations fail to state an Eighth Amendment claim.  *Lindwurm v. Wexford Health Sources, Inc.*, 2003 WL 22969348 (10th Cir. 2003) (Eighth Amendment claim based upon occasional failure to receive prescribed medication dismissed where occasions were isolated and brief, inmate failed to establish that lapses posed an excessive risk to his health, or that defendants knew of risk and disregarded it); *see also Wynn v. Mundo*, 367 F.Supp.2d 832 (M.D. N.C. 2005); *Peterson v. Scully*, 707 F.Supp. 759 (S.D.N.Y. 1989).

**III.**     **Conclusion**

The Court being sufficiently advised, it is **ORDERED** as follows:

1.      Plaintiff's Complaint [Record No. 2] is **DISMISSED**, with prejudice.

2.      Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

This March 12, 2008.



Signed By:

*Karl S. Forester*   K S F

**United States Senior Judge**